# IN THE UNITED STATES DISTRICT COURT FOR THE

# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EMILY D. BLAKE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-20-962-AMG |
| ) | |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Emily D. Blake ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. (Doc. 1). The Commissioner has answered the Complaint and filed the Administrative Record ("AR") (Docs. 11, 12), and the parties have fully briefed the issues (Docs. 18, 22, 23).[2] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 15, 16). Based on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1] Kilolo Kijakazi is the Acting Commissioner of the Social Security Administration and is substituted as the proper Defendant. *See* Fed. R. Civ. P. 25(d).

[2] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

**I.     Procedural History**

Plaintiff filed an application on October 15, 2018, for DIB, alleging a disability onset date of March 3, 2018. (AR, at 185-188). The SSA denied the application initially and on reconsideration. (*Id.* at 66-83, 84-108). Then an administrative hearing was held on January 29, 2020. (*Id.* at 41-65). Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id.* at 7-35). The Appeals Council subsequently denied Plaintiff's request for review. (*Id.* at 1-6). Thus, the ALJ's decision became the final decision of the Commissioner. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

**II.    The Administrative Decision**

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 3, 2018, the alleged onset date. (AR, at 12). At Step Two, the ALJ found that Plaintiff had the following severe impairments: "obesity, seronegative rheumatoid arthritis, hyperthyroidism, and depression." (*Id.*) At Step Three, the ALJ found that Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.* at 14). The ALJ then determined that Plaintiff had the RFC to

> perform light work as defined in 20 CFR 404.1567(b). Specifically, I find that the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit for six hours in an 8-hour workday with normal breaks. She can stand and/or walk for six hours in an 8-hour workday with normal breaks. Push and pull limits consistent with lifting and carrying limitations. She is able to do complex, work like activities but at a minimum (defined during the hearing as semi-skilled) she can understand, remember and carry out simple and some more detailed instructions (defined during the hearing as semi-skilled) with routine supervision. She can relate to

>   supervision and others on a superficial (defined during the hearing as occasional) work basis and adapt to a work environment. However, she should avoid even moderate exposure to hazards such as unprotected heights and moving machinery.

(*Id*. at 15-16). Then, at Step Four, the ALJ concluded that Plaintiff was unable to perform any of her past relevant work. (*Id*. at 27). At Step Five, however, the ALJ found when "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform" such as a routing clerk, marker, or bench assembler. (*Id*. at 28). Thus, the ALJ found that Plaintiff had not been under a disability since March 3, 2018. (*Id*. at 29).

**III.   Claims Presented for Judicial Review**

On appeal, Plaintiff raises two issues. (Doc. 18). First, Plaintiff contends generally that "[t]he ALJ failed to properly evaluate the medical source evidence." (*Id*. at 3). Upon further examination of Plaintiff's largely disorganized argument, Plaintiff appears to more specifically argue that the ALJ improperly discounted the two residual functional capacity statements provided by Dr. Ashraf, Plaintiff's rheumatologist, in part due to (1) the ALJ's faulty reliance on the consultative exam by Dr. Williams, wherein the ALJ failed to articulate persuasiveness, supportability, or consistency, and also due to (2) the ALJ's failure to properly credit the physical disability parking placard application signed by Dr. Wilcox, wherein the ALJ failed to explain supportability or consistency; in addition to (3) the ALJ's incorrectly interpreting and relying on Dr. Wilcox's "unremarkable examination" of Plaintiff in January 2020. (*Id*. at 3-6). This discussion dovetails into an

argument that the ALJ improperly analyzed the November 2018 letter of Dr. Wilcox, Plaintiff's treating physician, by failing to articulate persuasiveness, supportability, or consistency. (*Id*. at 6-8). Finally, Plaintiff claims that the ALJ improperly analyzed the opinions of Ms. Kraft, a social worker, as unpersuasive. (*Id*. at 8-10). As her second issue on appeal, Plaintiff contends that "[c]laimant is credible/consistent[,]" that the ALJ did not adequately consider Plaintiff's symptoms and consistency, and the ALJ "never explained why she rejected the complaints by Claimant, as required." (*Id*. at 3, 13-15). These errors, Plaintiff maintains, require remand. (*Id.* at 15).

In response, the Commissioner argues that the ALJ properly evaluated the medical source opinions and evidence pursuant to the new medical evidence regulations. (Doc. 22, at 1). The Commissioner asserts that the ALJ appropriately discounted Dr. Ashraf's medical opinion after concluding it was unsupported by both Dr. Ashraf's treatment records and other medical evidence in the record. (*Id.* at 5-8). Likewise, the Commissioner argues that the ALJ reasonably concluded that Dr. Wilcox's opinions were not persuasive, as they were not supported by his own medical findings or consistent with the other objective medical evidence. (*Id*. at 8-9). The Commissioner further claims that the October 2018 application for a physical disability parking placard, signed by Dr. Wilcox, does not qualify as a medical opinion. (*Id*. at 9-10). The Commissioner asserts that the ALJ correctly found Ms. Kraft's two opinions "not persuasive, as they were not consistent with or supported by the record as a whole." (*Id*. at 10-13). Finally, the Commissioner argues that the ALJ reasonably concluded that Plaintiff's symptom testimony was not consistent with the evidence. (*Id*. at 13-15). "Because the ALJ applied the proper legal standards and

4

substantial evidence supports his findings," the Commissioner asks the Court to affirm the decision.  (*Id*. at 15).

### IV.     The Disability Standard and Standard of Review

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment.  20 C.F.R. § 404.1521; *see* 20 C.F.R. §§ 404.1502(a), 404.1513(a).  A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process).  To determine whether a

claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[3] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience." *Id*. "The claimant is entitled to disability benefits only if [Claimant] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d

---

[3] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a).

1080, 1084 (10th Cir. 2007). "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks and citation omitted). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## V. The ALJ Adequately Considered the Challenged Medical Opinions and Medical Records.

### A. Applicable Analysis

Under the applicable regulations,[4] the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[,] . . . including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, the ALJ

---

[4] The regulations governing the agency's evaluation of medical evidence were revised effective March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017), *as amended in* 82 Fed. Reg. 15132 (Mar. 27, 2017).

7

considers the persuasiveness of the opinions using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, such as "a medical source's familiarity with the other evidence in a claim." *Id*. § 404.1520c(c). Supportability and consistency are the most important factors. *Id*. § 404.1520c(a). "Supportability" examines how closely connected a medical opinion is to the medical source's objective medical evidence and supporting explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be." *Id*. § 404.1520c(c)(1). "Consistency," on the other hand, compares a medical opinion to the other evidence: "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id*. § 404.1520c(c)(2). The ALJ must articulate how persuasive he finds a medical opinion. *Id*. § 404.1520c(b). In doing so, the ALJ is required to "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions." *Id*. § 404.1520c(b)(2).[5]

### B. The ALJ Adequately Considered Dr. Ashraf's Medical Opinions.

Plaintiff first contends that the ALJ improperly discounted the two residual functional capacity statements provided by Plaintiff's rheumatologist Dr. Ashraf. (Doc. 18, at 3-6). As to those opinions, the ALJ found:

---

[5] An ALJ must consider, but need not explicitly discuss, the remaining factors (relationship with the claimant, specialization, and other factors) unless there are differing medical opinions on an issue and those opinions are equally well-supported and consistent with the record. *See* 20 C.F.R. § 404.1520c(b)(2), (3).

> The medical opinions provided by Ashraf are not persuasive. His opinions are inconsistent with the longitudinal medical evidence of records, including his findings, as documented above. Despite an opinion of debilitating rheumatoid arthritis, the claimant only required follow-up every three months with Dr. Ashraf. More importantly, the objective evidence of record is inconsistent with his medical opinions. Beyond findings of a "few MCP tenderness" without any swelling documented in July and October 2018, Dr. Ashraf's findings were unremarkable (8F). Consultative examination in March 2019 revealed strong grip strength. It further revealed no redness, swelling, or tenderness in any of the claimant's extremities. She was able to secure and grasp objects without issue (31F). Physical examination with Dr. Ashraf in September 2019, the same month as the majority of medical opinion, was unremarkable. The claimant exhibited a full range of motion of her hands without swelling or tenderness. Dr. Ashraf further noted that the claimant was doing better now on HCQ (40F). Physical examination with Dr. Wilcox, family physician in January 2020 was unremarkable. Musculoskeletal examination was normal. Gait and status was normal (45F).

(AR, at 26).

The decision reflects that the ALJ considered Dr. Ashraf's medical opinions and his treatment notes. The ALJ articulated that she did not find the opinions persuasive. She expressly considered the supportability and consistency factors. The ALJ explained that she found Dr. Ashraf's opinions to be unpersuasive because they were unsupported by and inconsistent with Dr. Ashraf's own treatment records and with other evidence in the record, including the consultative exam by Dr. Williams and the January 2020 examination by Dr. Wilcox. (*Id.* at 26). The ALJ therefore met the requirements of the regulations in evaluating Dr. Ashraf's medical opinions. Plaintiff's request that the Court find otherwise is nothing more than a request to reweigh the evidence, and this Court must decline that request. *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) ("Concluding otherwise would require us to reweigh the evidence, a task we may not perform."). "The ALJ was entitled to resolve [] evidentiary conflicts and did so." *Id*.

9

Plaintiff claims, in his argument regarding the opinions of Dr. Ashraf, that the ALJ failed to articulate the persuasiveness, supportability, or consistency of the consultative exam by Dr. Williams and failed to explain the supportability or consistency of the physical disability parking placard application authorized by Dr. Wilcox. (Doc. 18, at 5-6). Neither of these are medical opinions; therefore, they do not require the medical opinion analysis. "A medical opinion is a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s)" and whether a claimant has a limitation or restriction in the ability to perform physical, mental, or other demands of work or to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). Although Dr. Williams examined Plaintiff — and the ALJ correctly considered Dr. Williams' objective medical findings as part of the record — Dr. Williams did not assess Plaintiff with any specific limitations and thus did not render a "medical opinion" requiring analysis. (AR, at 878-86). Likewise, the application for a physical disability parking placard signed by Dr. Wilcox does not constitute a "medical opinion" under the regulations. (AR, at 887); *see Moore v. Colvin*, 2014 WL 5765665, at *3 (N.D. Okla. Nov. 5, 2014) ("The court finds that the checking of a box on the application for a parking placard, standing alone, does not qualify as a medical opinion that the ALJ was required to discuss.").

### C. Dr. Wilcox's November 2018 Letter Is Not A Medical Opinion.

Plaintiff's argument includes discussion of records from Dr. Wilcox, Plaintiff's treating physician, and the specific allegation that "[t]he ALJ failed to examine Dr. Wilcox's opinion for persuasiveness, supportability, or consistency. As discussed, Dr. Wilcox agreed [Plaintiff] needs a reduced workload, *supra*." (Doc. 18, at 8). Plaintiff

10

appears to be referring to Dr. Wilcox's November 2018 letter. As to that letter, the ALJ noted:

> In a letter dated November 2, 2018, Dr. Wilcox noted a treating relationship with the claimant since 2012. He indicated that the claimant had numerous medical conditions that could affect her ability to work. He noted treatment for anxiety, depression, idiopathic hypersomnia, hypothyroidism, and chronic fatigue. He noted that the claimant's "current conditions" reduced her ability to stand, bend, lift, and carry objects. He indicated that the claimant might have problems with social interaction due to anxiety. However, he further indicated was unable to provide an opinion about the claimant's ability to work (11F/3, 12F, and 13F).

(AR, at 23). Indeed, in his letter, Dr. Wilcox takes great pains *not* to opine on whether Plaintiff's impairments – which he notes are largely diagnosed and treated by other providers – might limit or restrict her ability to work. (AR, at 667). He notes that "[s]he certainly suffers from certain medical conditions that *could* affect her ability to work." (*Id.*) (emphasis added). However, he goes on to say that,

> [i]n terms of her ability to work related to these conditions I really cannot say. She has no one condition that would total[l]y preclude any employment but the totality of her illness would certainly make it a challenge for her but does this mean she is totally unable to work I cannot say.

(*Id.*) Dr. Wilcox's November 2018 letter is thus not a "medical opinion" because it does not opine on "what [Plaintiff] can still do despite [her] impairment(s)" and whether she has a limitation or restriction in the ability to perform physical, mental, or other demands of work or to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). Plaintiff concedes as much in her appeal. (*See* Doc. 18, at 7) ("Although Dr. Wilcox did not want to opine on Claimant's ability to work (T 556, 667) . . . ."). Accordingly, the ALJ did not err by failing to analyze its persuasiveness.

### D.     The ALJ Adequately Considered Ms. Kraft's Medical Opinions.

Finally, Plaintiff argues that the ALJ improperly analyzed the medical opinions of Ms. Kraft, a social worker that had a treating relationship with the Plaintiff during the relevant timeframe. (Doc. 18, at 8-10). In her analysis of the medical opinion evidence, the ALJ considered three letters authored by Ms. Kraft. (AR, at 23-24). As to those letters, the ALJ found:

> To the degree they offer any medical opinion at all, I find Ms. Kraft's letters unpersuasive. Medical opinions about pain and fatigue related to physical conditions are largely outside Ms. Kraft's area of expertise. Additionally, there is little to no support for a finding of a moderate response to work pressure, supervision, and co-workers or that work outside the home was a near impossibility due to chronic pain and/or fatigue. The medical evidence reveals that the claimant had a positive response to medication for seronegative rheumatoid arthritis and hypothyroidism (39F and 40F). Mental status examinations have remained largely unremarkable as documented (8F/8, 39F/1, 19, and 45F). Further, her mental health complaints have been managed on an outpatient basis with sporadic counseling and medication provided by her primary care physician (10F, 14F, and 45F). There is little to no evidence that a referral for medication evaluation with a psychiatrist or additional psychological services as intensive outpatient programs or services has been considered or required.

(*Id.* at 24).

The ALJ's decision to discount Ms. Kraft's assertions about Plaintiff's physical conditions was supported by substantial evidence, as she explained her not unreasonable view that Ms. Kraft is a social worker and thus not qualified to offer a medical opinion on Plaintiff's physical limitations. As to Plaintiff's mental conditions, the ALJ articulated that she found opinions in the letters "unpersuasive," with "little to no support" and inconsistent with the other medical evidence in the record including that Plaintiff's "mental health complaints have been managed on an outpatient basis with sporadic counseling and

12

medication provided by her primary care physician." (*Id.*) Although Plaintiff disputes the ALJ's characterization of Plaintiff's mental health treatment as "sporadic," the ALJ's analysis rests on the entirety of the objective medical evidence, including Plaintiff's "largely unremarkable" mental status examinations. (*Id.*) The ALJ conducted the required analysis of Ms. Kraft's opinions, and her assessment was supported by substantial evidence.

## VI. The ALJ Adequately Considered Plaintiff's Symptoms and Consistency.

### A. Applicable Analysis

When evaluating a claimant's symptoms,[6] an ALJ must consider:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

Social Security Ruling ("SSR") 16-3p: Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *7-8 (S.S.A. Oct. 25, 2017).

---

[6] The SSA defines "symptom" as "the individual's own description or statement of his or her physical or mental impairment(s)." SSR 16-3P, 2017 WL 5180304, at *2.

The ALJ must determine whether the claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record." *Id*. at *7.[7] If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id*. If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id*. Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008). Provided the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (quotation marks omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id*. Furthermore, the ALJ is entitled to resolve evidentiary conflicts. *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016).

---

[7] "This evaluation, previously termed the 'credibility' analysis, is now termed the 'consistency' analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a 'consistency' and 'credibility' analysis. *See Brownrigg v. Berryhill*, 688 F. Appx. 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority." *Tina G.B., v. Kijakazi*, 2021 WL 3617449, at *3, n.2 (N.D. Okla. Aug. 16, 2021). *See also Olson v. Comm'r, SSA*, 843 F. App'x 93, 97, n.3 (10th Cir. 2021) ("The Commissioner no longer uses the term 'credibility' in evaluating a claimant's statements. The analysis, however, remains substantially the same.") (internal citation omitted).

### B. The ALJ's Symptom Analysis Is Supported By Substantial Evidence.

Plaintiff contends that "[c]laimant is credible/consistent" and asserts that the ALJ did not adequately consider Plaintiff's symptoms and consistency and "never explained why she rejected the complaints by Claimant, as required." (Doc. 18, at 3, 13-15). The ALJ considered Plaintiff's testimony at the administrative hearing as subjective evidence of Plaintiff's symptoms. (AR, at 16-18). In doing so, the ALJ found that:

> [a]s for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the alleged severity of pain and result on her functioning is not supported by the medical evidence of record, which documents near-normal examinations and no pain management with changes suggestive of breakthrough pain.
>
> In this case, although the medical evidence documented the existence of impairments that could reasonably be expected to produce a certain degree of symptoms, the pivotal question is not whether such symptoms exist, but whether those symptoms occur with such frequency, duration or severity as to reduce the claimant's residual functional capacity or to preclude all work activity on a continuing and regular basis. Bearing this in mind, I find that restricting the claimant to performing the range of light work described above adequately addresses the location, duration, frequency, and intensity of the claimant's alleged symptoms as well as precipitating and aggravating factors.

(*Id*. at 17). In making this determination, the ALJ states that she has "considered the objective medical evidence, statements made by the claimant and other individuals, and other[] factors," specifically including the factors set forth in Social Security Ruling 16-3p, *supra*. (*Id*.) The ALJ thus considered the appropriate factors and adequately articulated her analysis that Plaintiff's subjective statements of her symptoms were not consistent with the objective medical evidence of record, including specifically "near normal examinations" and lack of history of pain management. The ALJ's determination is

15

supported by substantial evidence and therefore the Court will not upset it. *Cowan*, 552 F.3d at 1190.

### VII.  Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **AFFIRMS** the decision of the Commissioner for the reasons discussed above.

**SO ORDERED** this 30th day of March, 2022.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE